# LUVIA A. LYMAN, ADM'X, v. CENTRAL VERMONT R. R. CO.[*]

### Railroad. Receiver, when liable to an Action at Law for Negligence of Servants. Pleading.

1. RECEIVER. When the same person is receiver of one railroad and lessee of another, and both are operated by him together, the leased road is not receivership property; and an employee can maintain an action at law against him, without leave of the Court of Chancery, to recover for injuries resulting from the negligence of his servants in operating the leased road.

2. Such action is also maintainable although the defendant is receiver instead of lessee of the railroad where the injury occurred.

3. And in such cases it is not a question of jurisdiction in the courts of law, but only whether equity, on application of the receiver, will exercise its own jurisdiction of restraining suits. And if equity interposes, the injunction is in personam, directed to the party, but not to the court.

---

[*] Heard at the General Term, 1885.

4. PLEA—JURISDCTION. A plea to the jurisdiction is the first plea in the regular order of pleading; and it is waived when filed with the general issue.

5. A plea to the jurisdiction is defective that professes to answer the cause of action as a bar, and concludes with a prayer for judgment if the plaintiff ought to have or maintain his action.

6. JURISDICTION—GENERAL ISSUE. A plea that amounts to the general issue acknowledges the jurisdiction of the court.

7. ARGUMENTATIVE DENIAL. A mere argumentative denial of a material averment in the declaration amounts to an admission of its truth.

8. U. S. SUPREME COURT, DECISIONS OF. The decisions of the U. S. Supreme Court, though entitled to the highest respect, are controlling upon state courts only in cases affecting rights under Federal cognizance.

9. *Barton* v. *Barbour*, 104 U. S. 126, distinguished and criticised.

ACTION on the case. . Heard on demurrer, September Term, 1884, Rutland County, VEAZEY, J., presiding. Judgment *pro forma* that the demurrer to the defendant's special plea be sustained, and that the plea is insufficient. The pleas and order of pleading are stated in the opinion of the court. The declaration was in part :

" For that the defendant at, to wit, Shoreham, in the County of Addison, was the lessee of a certain railroad, known as the Addison Railroad, passing through said town, and as such lessee was long and had been operating and managing the same, and running locomotives and cars thereon, from, etc. ; and the plaintiff's husband and intestate, Daniel F. S. Lyman, was an employee of the defendant, as master and tender of the drawbridge, forming a part of said Addison Railroad, over Lake Champlain ; and as defendant's employee, in the discharge of his duty as its servant, frequently passed over said road, on his way to Rutland, in the County of Rutland, aforesaid, and return, upon the defendant's locomotives and cars, and thereupon it became and was the duty of the defendant to provide a suitable, safe and sufficient road-bed and track, and to use due and proper skill, care and diligence in providing a suitable, safe and sufficient roadway for the passage of said locomotives and cars to and fro over said railroad.

" Yet the said defendant, disregarding and neglecting its duty aforesaid, did not then and there provide a suitable, safe and sufficient road-bed and track for the passage of said locomotives and cars, to and fro over said railroad, but on the contrary thereof did negligently and carelessly provide a road-bed

and track which was insufficient, unsuitable and unsafe for the passage of locomotives and cars over the same, whereby and by means of the unsuitable, insufficient and unsafe condition of said road-bed and track a certain locomotive of the defendant, whereon said intestate was then and there riding, said intestate having got upon said locomotive at a preceding stopping place of trains running over said road, for the purpose of being able to attend to his duties at said drawbridge without delay, when the same should be reached by said locomotive, according to the course of his said employment and in pursuance of his duties therein, was thrown from the track and thrown down the embankment of said railroad and thereby the said intestate was then and there instantly killed ; that said intestate resided in Rutland, in said County of Rutland, and left surviving him a widow, the plaintiff Luvia A. Lyman, and four children ; and that said children constitute the next of kin of said intestate : Whereby the defendant became liable to an action for damages by force of the statute in such case made and provided at suit of the plaintiff as administratrix as aforesaid for her benefit as widow of said intestate, and for the benefit of his said next of kin, to the damage of," etc.

Pleas—general issue :

" And for a further plea in this behalf the said defendant, by leave of court, etc., says that the said plaintiff ought not to have or maintain her aforesaid action thereof against the said defendant, because the defendant saith that at the time of the pretended injury in and by said declaration complained of, the said defendant was not in the possession of the railroad, engines, cars, or property in said declaration mentioned, nor controlling the same, nor the agents, servants or employees engaged or employed on or about the same ; but the defendant avers, that at the time aforesaid, and for a long time before and after, to wit, from the first day of January, 1874, continuously down to the time of the beginning of this suit, said railroad, engines, cars and property were in the sole and exclusive possession, management and control, and each and all of the said agents, servants and employees, were in the sole and exclusive employment and control of the Central Vermont Railroad Company as receivers and managers of the Vermont Central and Vermont and Canada Railroads, and property connected with and appertaining thereto under and by virtue of a decree or

order of the Honorable the Court of Chancery, within and for
the County of Franklin and State of Vermont, rendered on the
21st day of June, 1873, in a cause then pending in said Court
of Chancery, entitled *The Vermont and Canada Railroad Co.
et al.* v. *The Vermont Central Railroad Company et al.*, and
not otherwise.

" And this the said defendant is ready to verify : Where-
fore the said defendant prays judgment, if. the said plaintiff
ought to have or maintain her aforesaid action thereof against
the said defendant, etc."

*Noble & Smith, Stephen E. Royce*, and *E. J. Ormsby*, for
the defendant.

The plea sets forth a perfect defence to the cause of action
alleged in the declaration.

When the affairs of a railroad have passed into the hands of
a receiver, who has exclusive charge of its management, pos-
session of its property, and the employment of its operatives
and employees, the *receiver* is liable (leave to sue him having
been first obtained from the court by which he was appointed)
for personal injuries sustained by reason of the negligent man-
agement of the road.   High Rec. s. 395 ; *Meara's Adm'r* v.
*Holbrook*, 20 Ohio St. 137 ; *Potter* v. *Bunnell*, Ib. 159 ; *O.
& M. R. R. Co.* v. *Anderson*, 10 Ill. App. 313 ; *O. & M.
R. R. Co.* v. *Davis*, 23 Ind. 553 ; *Nichols* v. *Smith*, 115
Mass. 332 ; *Barton* v. *Barbour*, 104 U. S. 126 ; Note, 23
Am. Law Reg. 590.

The receiver is thus liable, *not* personally, but in his official
capacity ; and the damages recovered are collectible *only* out
of the funds held by him as receiver.   *Camp* v. *Barney*, 63
N. Y. Sup. Ct. 622 ; s. c. 4 Hun, 373 ; *Hicks* v. *R. R.
Co.* 18 Rep. 479 ; *Meara* v. *Holbrook, supra; Klein* v. *Jewett*,
26 N. J. Eq. 474 ; *Jordan* v. *Wells*, 3 Woods, 527 ; *Kennedy*
v. *R. R. Co.* 11 Cent. L. J. 89 ; *Davis* v. *Duncan*, 23 Am.
Law Reg. 582.

It follows as a corollary from the above, and is so adjudged
upon principle and authority, that since the receiver is thus

liable for injuries resulting from his negligence to the same extent that the company itself might have been, the corporation is *not* liable for the negligent acts of the receiver, or his agents or employees. High Rec. s. 396 ; Pierce R. R. 285 ; *O. & M. R. R. Co.* v. *Davis, supra; Bell* v. *R. R. Co.* 53 Ind. 57 ; *Metz* v. *R. R. Co.* 58 N. Y. 61 ; *Rogers* v. *R. R. Co.* 17 Cent. L. J. 290 ; *Davis* v. *Duncan, supra; Turner* v. *R. R. Co.* 74 Mo. 602.

The fact that the defendant was receiver may be given in evidence under the general issue, and constitutes a perfect defence. *O. & M. R. R. Co.* v. *Davis, supra.* That fact being pleaded in this case, stands admitted by the demurrer, and is conclusive of the plaintiff's right under the declaration. *Rogers* v. *Mobile & C. R. R. Co.* 16 Rep. 536. Nothing appears in the pleadings here to show that the defendant and the receiver *are* identical, and nothing even indicates or implies it, save the bare fact of identity in name. This, standing alone, would have only slight, if any, *tendency to prove* the fact. *Hartland* v. *Windsor*, 29 Vt. 354. In the case of a natural person, the law necessarily keeps up just as sharp a distinction between his personal liabilities and his liabilities incurred purely in a representative capacity, as if there were two persons instead of one.

The declaration is : " You were my master and I your servant. You were negligent," etc. The plea is : " I was not your master, and therefore could not be negligent, etc. The relation did not exist. You were the servant of A. B., receiver." The liability, if any, does not exist against any person or corporation, personally. It is simply a claim against a trust fund.

The above propositions are not at all in conflict with the decisions of this court in *Blumenthal* v. *Brainerd*, 38 Vt. 402, and *Newell* v. *Smith*, 49 Vt. 255. *Morse* v. *Brainerd*, 41 Vt. 550, is not pertinent. *See* High Rec. 139 ; Pierce R. R. 265 ; *Cardot* v. *Barney*, 63 N. Y. 281. The declaration is bad in substance. Pierce R. R. 393 ; *Robertonson* v. *R. R. Co.* 22 Barb. 91 ; *Clark* v. *R. R. Co.* 15 Rep. 461.

It does not allege that the defendant owed any duty to plaintiff's intestate in respect of the running of locomotives or cars. It does not allege that the plaintiff's intestate was himself without negligence or fault, and in the exercise of reasonable care, or that he was himself ignorant of the defect or insufficiency in the road-bed or track which caused the injury. These were necessary allegations. *Maxfield* v. *R. R.* 8 Am. Law Reg. 261; *Telfer, Adm'r*, v. *N. R. R.* 3 Ib. 665; *Wilds* v. *H. R. R. R.* 2 Ib. 76; *Mangam* v. *R. R.* 1 Ib. 631; *O'Brien* v. *R. R.* 6 Ib. (O. S.) 361; Ib. 534; *Buzzell* v. *Laconia M'f'g Co.* 48 Me. 113; Shearm. & Red. Neg. s. 94, n.

*F. C. Swinington*, for the plaintiff.

The mere fact that the Central Vermont Railroad Company was acting as a receiver in chancery is no defence. From *Sprague* v. *Smith*, 29 Vt. 421, down to the present time, our courts have uniformly held that such a defence is not recognized to a suit in the common law courts for the breach of any duty assumed by a receiver while acting as such. *Blumenthal* v. *Brainerd*, 38 Vt. 402; *Morse* v. *Brainerd*, 41 Vt. 550; *Cutts* v. *Brainerd*, 42 Vt. 566; *Newell* v. *Smith*, 49 Vt. 255. In *Newell* v. *Smith*, *supra*, when this question was last before this court, Judge POWERS used this language, after stating the above proposition: " We have no occasion nor inclination to modify the doctrine heretofore announced by the courts upon this subject."

The courts of several other states have either followed the Vermont doctrine or announced the same on this subject. Some of them are : *Paige* v. *Smith*, 99 Mass. 395; *Ballou* v. *Farnum*, 9 Allen, 47; *Kain* v. *Smith*, 80 N. Y. 458; *Rogers* v. *Wheeler*, 43 N. Y. 598; *Meara's Adm'r* v. *Holbrook*, 20 Ohio St. 137; *St. Jo. & D. R. R.* v. *Smith*, 19 Kan. 255; 6 Rep. 331; *Allen* v. *Central R. R. Co.* 42 Iowa, 683; *Klein* v. *Jewett*, 26 N. J. Eq. 474; *Palys* v. *Jewett*, 32 N. J. Eq. 302; *Kinney* v. *Crocker*, 18 Wis. 74; *Hills* v. *Parker*, 111 Mass. 508; *Hopkinson* v. *Connell*, 2 Tenn. Ch. 323.

Lyman *v.* Central Vermont R. R. Co.

Upon a careful examination of the above and other authorities upon this subject, it will be seen that they may be classified under, at least, three principal heads, viz. : (1) Actions *ex contractu;* (2) actions *ex delicto,* for negligence of servants and agents ; (3) actions for the personal wrong and negligence of the receiver himself.   If the receiver can be held responsible in actions *ex contractu,* or to go further, and hold him liable for the negligence of his servants and agents, as the above cases do, *a fortiori* he is liable for his *own personal wrong and negligence.*   That is this case.   3 Wood's R. R. Law, 482 ; Jones Ry. Sec. s. 511 ; Cooley Torts, 119 ; *Cardot* v. *Barney,* 63 N. Y. 281 ; *Camp* v. *Barney,* 63 N. Y. 625 ; Mersey Dock Cases, 11 H. L. Cases, 443 ; *Duncan* v. *Findlater,* 6 C. L. & Fin. 901 ; *Hall* v. *Smith,* 2 Bing. 156.   This principle is admitted in *Barton* v. *Barbour,* 104 U. S. 126.

The protection the receiver is seeking is not properly made here ; it is accorded to him only on his own application in the Court of Chancery appointing him.   This privilege of protection, however, he can waive, by appearing and pleading. *Newell* v. *Smith,* 49 Vt. *supra; Blumenthal* v. *Brainerd,* 38 Vt. *supra; Naumburg* v. *Hyatt,* 24 Fed. Rep. 901 ; *Jerome* v. *McCarty,* 94 U. S. 734 ; *Camp* v. *Barney, supra.*

The test is, not how the judgment was taken, but whether it is a claim that falls within that class of claims, costs and expenses incident to the receivership.   Possibly the receiver has conducted himself so negligently that he would not be entitled to be reimbursed out of the trust property.   *Hopkins* v. *Connell,* 2 Tenn. Ch. 323 ; *Kinney* v. *Crocker,* 18 Wis. 74 ; Jones on R. R. Securities, 527.

The relation of master and servant exists between a receiver and the employees.   The fact that he is a receiver does not change this relation, nor the law applicable thereto.   Jones on R. R. Securities, s. 511 ; *Ballou* v. *Farnum,* 9 Allen, 47 ; *Meara's Adm'r* v. *Holbrook,* 20 Ohio St. 137 ; *Kain* v. *Smith,* 80 N. Y. 458.

The opinion of the court was delivered by

Powers, J. This is an action on the case for negligence in the operation of the Addison Railroad by the defendant as lessee, whereby the plaintiff's intestate, an employee of the defendant, was killed.

The defendant filed the plea of the general issue to which the similiter was answered, and a special plea to which there was a general demurrer.

The question for consideration arises upon the demurrer.

The substance of this plea is that the defendant was not at the time when, etc., in the possession or control of said railroad and the rolling stock of the same, nor in control of the servants and employees operating the same, but that the Central Vermont Railroad Company, *as* receivers and managers of the Vermont Central and Vermont & Canada railroads, and property connected therewith and appertaining thereto, under and by virtue of a decree or order of the Court of Chancery within and for Franklin County, rendered June 21, 1873, in a cause then pending in said court, entitled *Vt. & Canada R. R. Co.* v. *Vt. Central R. R. Co. et al.*, was at the time when, etc., in the sole and exclusive possession, management and control of said railroad, its rolling stock, and the servants operating the same.

There is some attempt made in the defendant's brief to claim that the defendant named in the declaration is a different person from the party set up as receiver. But if this refinement were possible it would not aid the defendant; as in such case the plea would amount to the general issue, and this would acknowledge the jurisdiction of the court.

But we think the terms of the plea should have a reasonable construction; and its natural import is, that the defendant named in the writ as a party primarily responsible, in fact was a mere representative not personally answerable; as if A be sued generally and he pleads that he was administrator.

It is to be noticed that the plea does not deny the allegation in the declaration that the defendant was the lessee of the Addi-

son road, and was operating such road as lessee, except argumentatively, which is not enough. The want of a denial is an admission of the fact alleged in the declaration that the defendant was such lessee and operator of the road as charged. "Every pleading is taken to confess such traversable matters alleged on the other side as it does not traverse." Steph. Pl. 217.

This plea upon the defendant's theory is a plea to the jurisdiction. It attempts to set up reasons why the Rutland County Court has not jurisdiction over the defendant. In this posture the plea is too late in time. It was filed with a plea of the general issue on which issue has been joined, whereas a plea to the jurisdiction is "the first plea in the regular order of pleading on the part of the defendant." Gould Pl. chap. 5, s. 13. It is analogous to a plea in abatement; and if the defendant files any other plea like the general issue, it is waived; as a plea of the general issue confesses jurisdiction. Gould, c. 2, s. 37.

As a plea to the jurisdiction, it is defective in that it professes to answer the cause of action as a bar, and concludes with a prayer for judgment if the plaintiff ought to have or maintain her action; whereas the matter set up does not meet the cause of action. The defendant does not attempt to say the plaintiff has no right to sue anywhere, but that she cannot sue where she attempts to. This is the scope and theory of the plea as the defendant argues his case, though it is manifest that no sufficient allegations appear to warrant such claim. Giving to the plea all that the defendant claims for it, it amounts to this: the cause of action must be referred to the court appointing the receiver for trial and determination.

The plea does not aver that the Addison Railroad and the rolling stock used thereon is parcel of the receivership estate in the hands of the Franklin County Court of Chancery for administration through its receivers and managers, nor does it aver any prohibition upon the plaintiff's proceeding with her action in the Rutland County Court, but rests upon the mere

proposition that the defendant has been appointed receiver of other railroads impounded in a cause depending in another court, and as such receiver is in possession and control of the Addison road. All this is consistent with the allegation in the declaration that the defendant is the lessee and operator of the Addison road, and such allegation is to be taken as true.

The same person who was the receiver of the other roads was the lessee of the Addison road, but this did not make the Addison road receivership property, nor expose it to administration as receivership estate by the Franklin County Court of Chancery. The receiver acquired it by contract, not by decree of the Court of Chancery.

If the Court of Chancery consented that its receiver might step outside his proper function as receiver of the Vermont & Canada and Vermont Central railroads and engage as a lessee in business foreign to the administration of the property in the hands of the court, he stands as to such business and as to all persons employed by him or having business relations with him in the conduct of such foreign business, not as a receiver in the sense that he is therein an officer of the court, but as a party *sui juris*, acting as his own principal and upon his own responsibility. The order of the court, if any, sanctioning his engagement in such outside business, is available to him in the settlement of his accounts as receiver of the roads in the hands of the court, but not as the guage of his responsibility to third persons dealing with him.

The case of *Kain* v. *Smith*, 80 N. Y. 458, is a well-considered case and directly in point. There, as here, the plaintiff was an employee of the defendant, who was the lessee of the O. & L. C. Railroad and a receiver of the Canada and Central railroads. The plaintiff was injured in the line of duty by defective machinery used in the operation of the leased road. The declaration charged the defendants as carriers of passengers and freight, and having in use in such business the defective machinery occasioning the plaintiff's injury.

The defence set up there was substantially that urged here.

The court, speaking of the defendant's relation to the injury, say, page 470 : " He was not in possession of the O. & L. C. Railroad as an officer of any court or by its authority. The court itself never had possession or control over it. He went into possession with his associates by virtue of a contract. He was permitted, not directed, by the court to make it, and this permission will serve him upon his accounting for his management of the Vermont Central road." Again : " Outside the State he stands as an individual liable for his negligence, whether he acts personally or through agents, alone or in company with others. He cannot be shielded by a description of his office or a declaration that he is acting in an official character."

If the defendant would be liable upon the facts in New York, he clearly would be in any jurisdiction.

But pursuing the line of argument taken at the hearing before us, and giving the plea the scope it is claimed to have, we think that if the defendant had been in fact a receiver instead of a lessee of the Addison road, operating it under the orders of the Court of Chancery, then having assumed the character of a common carrier of freight and passengers, it would be answerable for its torts in the management of the road to the same extent that the Addison Railroad Company would have been, in the same operation, to its employees as well as third persons.

This court is already committed to this doctrine. In *Sprague v. Smith*, 29 Vt. 421, the defendant was sued for an injury to a passenger. The defendant was operating the road as trustee for the bondholders. Defence was made that the trustee could not be made liable personally. Ch. J. REDFIELD, for the court, said : " And we can see no reason why the defendants are not liable *to the same extent as the company would have been,* and upon similar grounds to those upon which lessees or any others exercising the franchise of the company for the time must be ; that is, that they are the ostensible parties who appear to the public to be exercising the franchise of the com-

pany.  *  *  *  The party having this independent control is in general liable for the acts of those. under such control, whether of *contract* or *tort*."

In *Blumenthal* v. *Brainerd*, 38 Vt. 402, the defendants were sued for the loss of goods, two counts charging them as common carriers, and one as warehousemen. Defence was made that they were receivers in chancery of the railroads, in the operation of which the goods were lost, and that they were subject only to an accounting for the damage in that court, and could not be made liable in this action as common carriers. The court said : " A Court of Chancery will protect a person acting under its process or authority in the execution of a decree or decretal order against suits at law, and will compel parties to apply to that court for relief. This protection is accorded by that court to its officers *only on their application*, and is granted by the chancellor in the exercise of his discretion ; and it is to be presumed that it would be granted in any necessary or proper case for relief. 2 Story Eq. Juris. ss. 833a, 833b, 891 ; 2 Dan. Ch. 1433. But we think that the mere fact that the defendants were acting as receivers under the appointment of the Court of Chancery cannot be recognized as a defence to a suit at law, for the breach of any *obligation* or *duty*, which was fairly and *voluntarily assumed* by them in matters of business conducted or carried on by them while acting as receivers." .

In *Newell* v. *Smith*, 49 Vt. 255, the defendants were sued as common carriers for negligent delay in the transportation of goods. Defence was made that the defendants had connection only with goods as receivers in chancery. The court said : " The defendants were receivers in chancery of the property of the railroads employed in part in the transportation of the goods in question. In the operation and management of the roads, they sustained to persons dealing with them the character of common carriers. They at all times might invoke the aid of the Court of Chancery in any matter affecting their duty or liability under their trusteeship ; waiving this, they *are amen-*

*able in the common law courts* to actions for negligence as carriers."

The doctrine is not peculiar to this State.

In *Paige* v. *Smith*, 99 Mass., the same defence was made to a claim for loss of goods entrusted to them as common carriers, and they were held liable. And in *Nichols* v. *Smith*, 115 Mass. 332, they were held in an action at law for the loss of wool in a depot under their control.

In *Ballou* v. *Farnum*, 9 Allen, 47, the plaintiff claimed damage for the negligence of a switchman on the Norfolk County Railroad. The defendants were trustees, and denied that they managed the road in a personal capacity; but the court held them personally liable, as they were in control, exercising the franchise of the corporation, and controlling all the servants employed in the conduct of the business. On the same ground like decisions were made in *Barter & Co.* v. *Wheeler*, 49 N. H. 9, and *Lamphear* v. *Buckingham*, 33 Conn. 237. In *Kinney* v. *Crocker*, *receiver*, 18 Wis. 74, the defendant, a receiver, was sued for the negligence of his servant. The court said : "A court of equity will, *on proper application*, protect its own receiver, *when the possession* which he holds under the order of the court *is sought to be disturbed.*" And again : "But in all these cases it is *not* a *question of jurisdiction in the courts of law*, but only a question whether equity will exercise its own acknowledged jurisdiction of restraining suits at law under such circumstances, and itself dispose of the matter involved. It follows that although a plaintiff in such case, desiring to prosecute a legal claim for damages against a receiver, might, in order to relieve himself from the liability to have his proceeding arrested by an exercise of its equitable jurisdiction, very properly obtain leave to prosecute ; yet his failure to do so is *no bar to the jurisdiction of the court of law*, and *no defence* to an otherwise legal action in the trial. There can be *no room to question* this conclusion in all cases where there is *no attempt to interfere with the actual possession* of property which the receiver holds *under the order of the Court of Chancery*, but only

an attempt to obtain a judgment at law in a claim for damages."
In this case the action was brought against the receiver him-
self, and the question of jurisdiction was the exact point in
judgment.

In *Allen* v. *Central R. R.* 42 Iowa, 683, suit was brought
against the corporation whose property was in the hands of a
receiver for a trespass in ejecting a passenger from a train.
Defence was made that the road was in the hands of a receiver.
Some question was made whether the receiver, after his appoint-
ment a few days prior to the injury, had assumed control, but
the trial court ruled that the action could not be maintained
against the company unless leave to prosecute it had first been
obtained from the court appointing the receiver ; and this was
the question for consideration in the Supreme Court.   The
court cites and quotes from *Kinney* v. *Crocker*, last above
cited, and says : " This case, in our opinion, announces the
correct doctrine."

That the objection is not a jurisdictional bar is generally, and it
may be added, almost universally held.  *Angel* v. *Smith*, 9 Ves.
335 ; Chautauque County *Bank* v. *Risley*, 19 N. Y. 369 ; *Camp*
v. *Barney*, 4 Hun, 373 ; High on Receivers, s. 398 ; Cases, *supra;*
Jones R. R. Securities, ss. 509, 510. And on principle, why should
the rule be otherwise ?   A receivership of a railroad is created,
as in all other cases, as a provisional and *pro tempore* scheme
for the preservation of the estate *pendente lite*.   The scope of
the receiver's duty is purely administrative.   He is bound to
manage the estate according to the rules of good husbandry—
good husbandry as applicable to the character of the estate he
holds.   If the property happens to be a railroad or other going
concern, that for public reasons or its own conservation or ad-
vantgage must be kept in operation, and the receiver, with or
without the credentials of the court, deems it advisable to have
other railroads, or engage in other ventures foreign to the scope
of his administrative duty to the estate he holds, and so must
have employees, must create extended business relations with
third persons, and must expose the persons and property of

others, strangers to the receivership estate, to peril and loss; in short, in addition to the function conferred by the court, must take on another character, as lessee, carrier, etc.; then it is easy to see that in all action had in such other and self-assumed character, he is outside his proper function as receiver, and inside his character as master and manager of a business voluntarily assumed, personally managed, and, so far as third persons are affected, to all practical intents experimentally his own. If the sanction of the court be had in advance, this impresses no new character upon him or the business he assumes, but merely promises indemnity for the hazards of the venture. So long as he holds the property impounded by the receivership, and administers upon it for the purposes for which he was appointed, so far he is a receiver in the true essence and spirit of the office, and as such is entitled to absolute immunity and protection. When he takes on another character without the scope of his appointment and outside the tenor of the decree creating the receivership, he necessarily takes upon himself the burdens, liabilities and responsibilities incident to the business he assumes. And these liabilities are enforceable in the common law courts.

So far there seems to be no conflict in the cases, and the case at bar is precisely within this rule. We do not say that in this class of cases a court of equity has no right under any circumstances to interfere with proceedings at law to enforce such voluntarily assumed liabilities; but the circumstances warranting such interference would necessarily be of an extraordinary character, and, conceivably, could hardly exist.

But in the other class of cases, where the receiver, in the management of the receivership estate itself, needs the intervention of the court under whose decree he acts, there is no question, in proper cases, of its jurisdiction to act. In Blumenthal's case, 38 Vt., and in Newell's case, 49 Vt., *supra*, and in *Morse* v. *Brainerd*, 41 Vt. 550, this court has affirmatively recognized this rule. But the intervention of the Court of Chancery is exerted only on the receiver's call for it (see cases

above), and not at all upon any theory that the common law court in which the receiver may be sued has no jurisdiction either over the subject-matter or the person of the receiver. " The court interferes on the principle of preventing a legal right from being enforced in an inequitable manner, or for an inequitable purpose." Kerr on Injunctions, 13.

And the only mode of interference is by action directed to the party and not the court before whom the party is proceeding. The writ of injunction is the usual and proper process. " It is important to remember that in granting this relief equity does not pretend or assume to interfere with another court. The injunction is *in personam* merely. It is directed to the *party*, not to the court or the officers thereof. It is not, in other words, a writ of prohibition." Bispham's Equity, 459. " The writ of injunction by which proceedings at law are restrained, is not in the nature of a prohibition. In issuing injunctions courts of equity claim no supremacy over the ordinary tribunals. An injunction is addressed only to the individual, and is not directed to the court. Courts of equity in issuing the writ not only do not deny, *but in fact admit*, the jurisdiction of the ordinary tribunals." Kerr on Injunction, 15.

So far it seems to be clear that the defence, under this special plea, does not go to the jurisdiction of the common law court, but is of an equitable character that does not bar all remedy, but refers it to an equitable forum for enforcement.

So far as shown, *Barton* v. *Barbour*, 104 U. S. 126, is the only case that squarely upholds the defendant's contention. In all questions affecting rights under Federal cognizance the decisions of the Supreme Court of the United States are controlling upon State Courts. In other cases its decisions are entitled to the highest respect.

In *Barton* v. *Barbour* the facts would be parallel with those in the case at bar, provided it be assumed—which is not true—that the Addison road was part of a receivership estate, and the defendant had been sued *as* receiver.

In that case the defendant was sued in the District of Columbia as receiver of a railroad in Virginia for a personal injury received on said road. He filed a plea to the jurisdiction of the court, setting up his receivership of the road,. and averred that the plaintiff had not obtained leave of the court appointing him receiver. to bring and maintain the suit. It was held, on demurrer to this plea, by the majority of the court, that the court had no jurisdiction. Mr. Justice Woods states the question for decision as follows : " The defendant insists that the Supreme Court of the District of Columbia had no jurisdiction to entertain the suit *without leave of the court by which he was appointed.*"

. The qualifying words underscored are made the hinge upon which the question of jurisdiction is made to turn.

The learned judge continues : " It is a general rule that before suit brought against a receiver, leave of the court by. which he was appointed must be obtained. *Davis* v. *Gray*, 16 Wall. 203, and the cases there cited. * * * A suit therefore brought without leave to recover judgment against a receiver for a money demand is virtually a suit the purpose of which is, and effect of which may be, *to take property of the trust* from his hands and apply it to the payment of the plaintiff's claim *without regard to the rights of other creditors* or the orders of the court which is administering the. trust property. We think, therefore, it is immaterial whether the suit is brought against him to recover specific property or to obtain judgment for a money demand. In either case *leave should be first obtained.*" Again, as showing the reason for the rule the court say : " If the court below had entertained jurisdiction of this suit * * * it *would have been an usurpation of the powers and duties* which belonged exclusively to another court, and it would have been made *impossible of performance* the duty of that court *to distribute the trust assets to creditors equitably and according to their respective priorities.*"

The court thus explicitly lays down the rule that *leave to prosecute* must first· be had, for the reason that otherwise the

trust assets cannot be equitably distributed, and priorities will
be disregarded.

What are the assets of the trust that are to be distributed
among creditors according to their proper priorities? Fortun-
ately the learned judge has answered this question in his
opinion. He says: "It was said by this court in *Cowdrey* v.
*Galveston, H. & H. R. R. Co.* 93 U. S. 352, that the allowance
for goods lost in transportation and for damages done to property
whilst the road was in the hands of the receiver was properly
made. The earnings received were as much chargeable with
such loss and damage as they were chargeable with the ordinary
expenses of managing the road. The bondholders were only
entitled to what remained after charges of this kind as well as
the expenses incurred in their behalf were paid." The learned
judge then adds his own approval of this doctrine: "The
claim of the plaintiff which is against the receiver for a per-
sonal injury sustained while travelling on the railroad managed
by him stands on precisely the same footing as any of the ex-
penses incurred in the execution of the trust, and must be
adjusted and satisfied in the same way."

All will agree that the learned judge's definition of receiver-
ship expenses is correct. No fund can be available for distri-
bution among the creditors of the trust except net income.
All expenses of management and all expenses incidental to
management must be paid before the rights of creditors attach
to income.

It is conceded in *Barton* v. *Barbour*, that in the book-
keeping of the receivership compensation must be made to the
plaintiff as part of the expenses of management before any ad-
justment of priorities is had or any debts of trust creditors
paid. Her compensation for her injury is the same in amount,
in the eye of the law, whether it be allowed in one court or
another. What difference, then, does it make with the funds
of the receivership whether the suit be in the courts of the
District of Columbia or in the courts of Virginia? What dif-
ference would it make with the assets whether the plaintiff

sued in the District of Columbia *with leave* of the Virginia court or *without leave?*

With all due respect to that court, it is submitted that some reason other than its effect upon the rights of trust creditors, must be found for the rule that *leave to prosecute* is a condition precedent to the existence or exercise of jurisdiction in the common law courts.

In weighing the force of the decision in *Barton* v. *Barbour*, it is to be remembered that the question arose upon a plea to the jurisdiction; and jurisdiction is denied for want of leave from the court of equity in Virginia to prosecute the suit. The learned judge does not favor us with the citation of any authorities holding that the jurisdiction of a common law court has ever been held to be dependent upon the *consent* of a court of equity.

It is not surprising that Justice MILLER felt constrained to give expression to his dissent from the position taken by the majority of the court. Speaking of the contest between the courts of equity and the common law courts in England he says : " In the contests between these courts it was never claimed that the Court of Chancery could act directly upon the court of law, or that the latter was bound in any way to follow the decisions of the former. Nor could the chancellor direct his writ to the common law courts or its officers ; but if it was determined to give any equitable relief in the matter pending in the law court, the injunction or other chancery process was directed to the suitor. Upon him alone was the power of the court exercised. In such a case as this, if the Court of Chancery was of opinion that the plaintiff was improperly interfering with the functions of the receiver, it could restrain him by injunction or punish him by attachment for contempt. * * * But I know of no principle or precedent whereby a court of law, having before it a plaintiff with a cause of action of which it has jurisdiction, and a defendant charged with an act also within the jurisdiction, is bound or is even at liberty to deny the plaintiff his lawful right to a trial because the defend-

ant is a receiver appointed by some other court, and to leave
the suitor to that court for remedy, when it it is known that
some of the most important guaranties of the trial to which he
is entitled, and which are appropriate to the nature of his case,
will be denied him." Justice MILLER quotes with approval
many of the cases cited, *supra*, including *Sprague* v. *Smith*,
29 Vt. 421.

It is quite true that it has often been said by courts and text
writers that leave to prosecute must be had before instituting
suit against a receiver in the common law courts.   But like
many other *dicta* with which the books abound, this proposi-
tion has doubtless been accepted upon trust, and promulgated
without giving its import careful consideration.

If a plaintiff in a suit at law is enjoined, and the injunction
afterwards removed, he does, in a practical sense, have leave
to prosecute his suit, and it is not improbable such procedure
gave rise to the notion that leave to prosecute is an essential
prerequisite.

The case of *Palys* v. *Jewett*, 32 N. J. Eq. 302, is cited, and
although the court repeats the proposition above referred to,
still the whole drift of the reasoning shows that it rests on no
solid foundation in reason.   In that case the Court of Chancery
had entertained a suit for damages occasioned by the negligence
of the servants of the defendant, a receiver of a railroad.   On
appeal Ch. J. BEASLEY sharply reprobates the notion that a
Court of Chancery can try such a question, and maintains that
a court of law with a jury is the only tribunal that can properly
determine it.   In the course of his opinion he says the power
exercised by the Court of Chancery was to prevent the taking
of the receivership property from the receiver, and to prevent
baseless litigation against him, and that this is accomplished
by requiring leave to prosecute the action at law from the
Chancery Court.   He adds that such leave will be granted not
*ex gratia* but *ex debito justitia*.   In the light of this case, leave
to prosecute the action at law accomplishes the same purpose
as the dissolution of an injunction restraining the prosecution.

If a Court of Chancery cannot properly try an action for negligence, and leave to institute it will be granted as matter of legal right, it would seem that a rule requiring a plaintiff to go through the meaningless ceremony of applying for a privilege that he already by right possesses, to a court powerless in itself to give him relief in the premises, has no substantial ground to rest upon.

This case in its reasoning upholds the conclusions which we reach in the case at bar.

Upon the whole, we think it is demonstrably clear that the defence set up in the case at bar does not go to the jurisdiction of the common law court; and we re-affirm the doctrine announced in Blumenthal's case in the 38th, and in Newell's case in the 49th Vt., and by the other cases and authorities cited, that the defence is one that the receiver can only make by invoking the interference of the Court of Chancery with the party prosecuting him in the common law court.

The defendant further insists that the declaration is bad in substance, but we think it sufficient. It is not necessary to allege in the declaration affirmatively that the plaintiff was without negligence, or that he was ignorant of the insufficiency of the road-bed and track, or the particulars in which the road was insufficient. It does sufficiently allege the duty of the defendant, its breach, and that the intestate was injured by reason of this breach of duty while he was in the line of his duty as an employee.

The liability of the master for injuries to his servant is well expressed in *Davis* v. *Central Vt. R. R. Co.* 55 Vt. 84; and this declaration covers all the essential elements involved in a right of recovery as there defined.

The *pro forma* judgment of the County Court sustaining the demurrer and adjudging the special plea insufficient is affirmed, and the case remanded with an order that the defendant answer over.