# Mobile & Ohio Railroad Company *v.* Dismukes.

94 131
o119 544
119 547

*Action by Consignee of Goods, against Railroad Company as Common Carrier.*

1. *Railroad charges under Alabama statute and acts of Congress.*—As to contracts for the transportation of goods by railroad from another State into Alabama. the provisions of the Alabama statute prohibiting, under a penalty, extortionate or discriminating rates or charges (Code, § 1159,) are superseded and rendered inoperative by the provisions of the act of Congress known as the "Inter-state Commerce Law;" but, the consignor and consignee of goods not being chargeable with notice of the schedule of rates established and fixed by the Inter-state Commerce Commission, they may lawfully contract for the transportation of goods at a less rate; and the consignee is entitled to recover the goods from the carrier who gave the bill of lading, on payment or tender of the charges therein specified, unless it is shown that he had notice of the published schedule of rates.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by H. C. Dismukes against the Mobile & Ohio Railroad Company, as a common carrier, to recover damages for the defendant's failure to deliver to him certain goods, of the value of $40.80, which were received by the defendant at Cairo, Illinois, consigned to the defendant at Sunny South, Alabama, a station on the Mobile & Birmingham railroad. The defendant gave a through bill of lading for the goods, in which the charges for transportation were stated to be $5.44. On the arrival of the goods at their destination, the plaintiff demanded them, and tendered that sum; but the railroad agent refused to deliver them, except upon the payment of $29.30 as charges for transportation. On ap-

peal to the Circuit Court, the facts being agreed on, and a jury waived, that court rendered judgment for the plaintiff. The defendant excepted to the judgment, and here assigns it as error.

E. L. RUSSELL, for appellant, cited *Baird v. St. L., Iron Mountain & So. Railroad Co.*, 42 A. & E. R. R. Cases, 281; *Stanley v. Wabash, St. L. & Pac. Railroad Co.*, 1b. 328.

McCLELLAN, J.—A statute of this State (Code, § 1159) provides, that "Any person or corporation, engaged in the business of transporting passengers or freights over any rail-road in this State, who shall exact and receive more than just compensation therefor, or demands more than the rates speci-fied in any bill of lading issued for such freights, . . . . . is guilty of extortion, and is liable to the party injured in double the damages sustained," &c.

The act of Congress, known as the "Inter-state Commerce Law," of February 4, 1887, as amended by act approved March 2, 1889, makes it unlawful for any common carrier to issue bills of lading at rates, or to demand or receive freight charges, variant from the rates established and published as therein prescribed, and filed with the Inter-state Commerce Commission; and this, whether the carriage in a given in-stance is by one common carrier, or by more than one having traffic arrangements and a joint tariff of charges. Not only so, but it is also made unlawful for any person or corporation, by what means soever, whether with the consent and connivance of the carrier or otherwise, to knowingly obtain transportation at less than the regular rates at the time in force on the line of transportation; and the infraction of the statute in the par-ticulars referred to, as well by consignors and consignees as y carriers, is made a highly penal offense.

In the case at bar, the Mobile & Ohio Railroad Company received at Cairo, Illinois, certain goods of the value of about $40, for transportation to Sunny South, Alabama, a station on the Mobile & Birmingham Railway, with which the initial line connected at Mobile, Alabama; and delivered to the shipper a bill of lading, whereby it was undertaken to trans-port the goods over the two roads in question to Sunny South, and there deliver them to H. C. Dismukes, for a compensation of $5.44. There was at the time a joint tariff of rates in force between the M. & O. and the M. & B. railway companies, be-tween the initial and terminal points of this shipment, which had been duly filed with the Inter-state Commerce Commis-sion, approved, promulgated and published, in consonance

[Mobile & Ohio Railroad Company v. Dismukes.]

with the act of Congress; and according to the rates fixed in this schedule, the freight charges on this consignment were, or should have been, $29.30. On arrival of the goods at Sunny South, the consignee tendered to the agent of the M. & B. Railway Co. $5.44, the amount of charges stipulated in the bill of lading, and demanded the property. This demand was refused, the insistance being that, the bill of lading to the contrary notwithstanding, the consignee was liable for the schedule rate of $29.30; and thereupon the consignee instituted this action for the value of the goods, as upon a failure to deliver the same to him, before a justice of the peace, whence, on judgment for plaintiff, an appeal was taken to the Circuit Court, where a trial *de novo* was had before the judge, without jury, on agreed facts. Judgment was again entered for plaintiff in the Circuit Court, and from that judgment this appeal is prosecuted, presenting for review the conclusion of the trial judge on the facts.

The statute of Alabama which we have quoted is relied on in support of the judgment. We do not think any aid can be derived from that source. The shipment—the transportation being from a point in Illinois, through the states of Kentucky, Tennessee and Mississippi, into Alabama—was an act of inter-state commerce, and clearly within the laws of the United States regulating that commerce. It, of course, can not be doubted that Alabama is without power to declare what rates of charge in respect of such commerce shall amount to extortion on the part of the carrier, or to declare that the demand for an amount of freight charges which the carrier is authorized under the act of Congress to impose, is rendered extortionate by reason of the fact that a less amount is stipulated to be paid and received between the parties to the bill of lading. To hold otherwise would be to give paramount efficacy to State regulation of a subject which is not only within exclusive National control, but with respect to which National legislation has already provided all regulations deemed necessary or expedient. Our statute may, no doubt, be looked to as determining what is extortion in freight charges for transportation within the State, and also, it may be, as affording a remedy and measure of redress for extortion in inter-state shipments, but not as declaratory of what shall constitute extortion in transactions of the class last named.

But, leaving the Alabama statute out of consideration, there is an element of contract in this case which, in our opinion, upon the agreed facts will support the judgment below. The Mobile & Ohio company agreed and bound itself to carry this consignment to Sunny South, Alabama, and there deliver it to

[Mobile & Ohio Railroad Company v. Dismukes.]

Dismukes, for a certain compensation. That company had no right, under the law and its tariff of rates adopted, approved and promulgated as by the law provided, to enter into any such contract; and so far as the company is beneficially concerned in it—so far as the contract might otherwise be relied on by the carrier against the consignee—it is void, as being in the teeth of the law of Congress as the same had been put into practical operation upon the carrying business of the company. But it by no means follows that the consignee has no rights under it, or, indeed, any less or other right than would have been his had the rate set down in the bill of lading been the approved rate for the transportation. It nowhere appears that either the consignor or consignee knew that the stipulated rate was different from the approved rate. It is not in the contemplation of the Inter-state Commerce Law that persons dealing with common carriers should be held to a knowledge of what their published schedules of rates contain. These schedules are no part of the law which all men are held to know, but are resultants *in pais*, so to speak, of the acts of the carrier and of the Inter-state Commerce Commission, done under and in execution of the law. There is nothing in the law which forbids shippers to contract for transportation at other rates than those specified in these schedules. It is only when the shipper *knowingly* contracts for a rate differing from that therein prescribed, that his act is denounced as unlawful and punished as a crime. The motive of this legislation, moreover, is the protection of persons dealing with common carriers. Its primary purpose is to prevent a resort on the part of carriers to the undue advantages which accrue to them from the circumstances of their relations to persons having need for their services. The provisions of the law should not be so strained or contorted as to defeat its purposes, and convert the shield it was intended to afford the unwary shipper, who has no choice but to patronize the carrier, into a sword with which to work his destruction more certainly and completely than would have been possible had not the arm of the government been put forth in his behalf. To allow the carrier to draw the shipper, entirely ignorant of the schedule of rates approved by the commission, into a contract of affreightment, upon which the goods are delivered and carried, at a stipulated rate which the shipper can afford to pay—as in this instance about twelve and a half per cent. of the value of the property—and then to refuse to deliver the shipment to the consignee, except upon payment of a rate which he can not afford to pay—in this instance, seventy-five per cent. of the value—and upon which the property would

[Torrey v. Forbes.]

not have been shipped at all, would be to put a construction on the law of Congress which its terms do not require or justify, and which would defeat the purposes which actuated its enactment. True it is that the contract here is one which the M. & O. company had no right to make. True it is that its execution on their part involved a crime. But the act of the shipper in entering into it is not, in the absence of knowledge on his part of the schedule rate, tainted with criminality, or violative of any provision of the Inter-state Commerce Acts. He is not *in pari delicto* with the contracting carrier; and he is entitled to the protection of that principle of law which enforces such a contract in behalf of the innocent party to it,—a principle which we conceive to be logically sound, and thoroughly settled upon authority. See *Tracy v. Talmage*, 14 N. Y. 162, and numerous later cases which are cited and discussed in a note to that case as reported in 67 Am. Dec. 153.

Affirmed.