[Southern Railway Company v. Harrison.]

# Southern Railway Company v. Harrison.

|119  539|
|141  279|

*Action for Damages for Wrongful Detention of Goods by a Common Carrier.*

1. *Contract governed by law of place.*—The general rule of law is, that a contract is governed, as to its nature, obligation, validity, and interpretation, by the law of the place where it is made, unless the parties have in view some other law, or unless it is to be wholly performed in some other place, in which case the law of the place of performance, or the law which both parties had in view, must govern.

2. *Contract of shipment from one state to another by what law construed.*—The weight of authority is, that a contract for the transportation of goods by a common carrier from one state or country to another, is governed by the law of the place where it is made and where performance begins, unless the parties, when entering into the contract clearly manifest a mutual intention that it shall be governed by the law of some other state or country.

3. *Contracts governed by act of Congress, how construed.*—No principal of comity requires the courts of one state to place the same construction upon an act of Congress, with respect to its effect on a contract within its operation, given to it by the decision of the Supreme Court of another state, in which the contract was made. Unless the national law has been construed by the Supreme Court of the United States, the courts of the various states will follow their own judgment in determining its effect on the contract, and the rights of the parties thereto growing out of it; but if it has received a construction from the highest national tribunal, its decision is supreme, and by it the state courts are bound.

4. *Interstate Commerce Law; published schedule of freight rates conclusive against carrier and shipper.*—Under the Interstate Commerce Law, one who has obtained from a common carrier transportation of goods from one state to another at a rate, specified in the bill of lading, less than the published schedule rates filed with and approved by the Interstate Commerce Commission, and in force at the time, whether he knew or not that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, nor of any sum less than the

schedule charges; whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of Congress, for the amount fixed by the published schedule of rates and charges. (*M. & O. R. R. Co. v. Dismukes*, 94 Ala. 131, no longer followed by reason of the decision in *Gulf City & Santa Fe R. Co. v. Hefley*, 158 U. S. 98).

APPEAL from Birmingham City Court.

Tried before Hon. WM. W. WILKERSON.

The cause of action set up in the complaint, and the facts of the case are shown in the opinion. The defendant filed a plea of the general issue, and a special plea setting up in effect that the contract of shipment was governed by the Interstate Commerce Act prohibiting common carriers engaged in interstate commerce from charging, demanding, collecting or receiving a greater or less compensation for the transportation of property received for interstate carriage than such as is specified in the published schedule of rates, fares and charges, required to be published and posted under that act, and that the rate in question was less than the proper rate contained in the schedule of rates which had been duly approved by the Interstate Commerce Commission, as required by the act, and duly published and posted as required thereby in defendant's stations in Atlanta and Birmingham; and that the defendant's agent had therefore wrongfully and by mistake charged said less rate, and that the defendant, after the transportation but before the delivery of the goods, had refused to deliver without payment of the true and lawful rate: Also that the contract of transportation was entire, for the continuous transportation of the goods wholly over the defendant's line, at one price, and was made and executed in the State of Georgia, and therefore governed by the laws of the State of Georgia, and that in and by such laws it was declared that a carrier under such a contract governed by the Interstate Commerce Act had the right to correct such a mistake before delivery of the goods and to collect the true and lawful rate as prescribed by the carrier's published and posted schedule of rates. The court sustained demurrers by plaintiff going to the sufficiency and substance of this plea. The defendant offered evidence tending to establish the averments of the plea, and excepted to the

court's sustaining objections thereto. These rulings are assigned as error.

SMITH & WEATHERLY, for appellants.—In addition to the argument shown by the opinion, presented the following: We insist that upon authority, the *Dismukes* decision should be either modified so as to make it apply only to cases where the proposed corrected charge is unreasonable and excessive, or extortionate; or else, if the court shall affirm the decision, in toto, after a review of the authorities, that it be held not to apply in this case because the law of the State of Georgia which is opposed to the view of this court, controls the rights and duties of the parties to the contract. On the proposition that the court should modify or limit its decision in the *Dismukes* case, we cite the following authorities: *G. C. & S. F. R. R. Co. v. Heflin,* 158 U. S. 98; 15 Sup. Ct. Rep. 802; *Railway Co. v. Bundick,* 94 Ga. 775; 21 S. E. 995; *Baird v. St. Louis &c. Co.* 41 Fed. Rep. 592. On the proposition that the rights and liabilities of the parties to this contract must be governed by the law of Georgia, see *Liverpool &c. Co. v. Phoenix Ins. Co.,* 129 U. S. 397, 447-459; *McDaniel v. C. & N. W. R. Co.,* 24 Iowa, 412; *Hogel v. C. M. & St. L. Ry. Co.,* 82 Iowa, 477; *Merchants Dispatch Trans. Co. v. Furthman,* 47 Ill. App. 561; *Meuer v. R. R. Co.,* 25 L. R. A., 81; *Fonseca v. Cunard S. S. Co.,* 153 Mass. 553; 12 L. R. A. 340; *Potter v. The Majestic,* 23 L. R. A. 746; *Dykes v. R. Co.,* 45 N. Y. 113, 117.

GREGG & THORNTON, *contra.*—This case is on all-fours with the case of *Mobile & Ohio R. R. Co. v. Dismukes,* 94 Ala. 131, where the Interstate Commerce Law is construed by this court. The question whether the appellee could recover in an action on the contract of shipment is immaterial. The action is in case, and is founded upon the breach of a common law duty.—*Sharpe v. Nat. Bank of Birmingham,* 87 Ala. 644; *Wilkinson v. Mosely,* 18 Ala. 288. The action includes a conversion, and while the goods were wrongfully withheld, appellant was an insurer.—*Hook v. Smith,* 18 Ala. 338; 4 Lawson's R. R. & P., §1700; *Bolling v. Kirby,* 90 Ala. 215; *Gray v. Crocheron,* 8 Por. 191.

BRICKELL, C. J.—On February 20th, 1896, appellant, a common carrier engaged in interstate commerce,

received from appellee at Atlanta, Georgia, for trans-
portation over its road to Birmingham, Alabama, two
carriages of the alleged value of $1,200, and delivered to
appellee a bill of lading in which the rate specified was
96 cents per hundred pounds, and the weight, 2,500
pounds, making the aggregate charge $24. Upon the
arrival of the carriages in Birmingham a few days later,
appellee tendered that amount in payment of the
charges, but the appellant refused to accept the tender,
or to make delivery of the carriages. The ground of
this refusal, was that the rate specified in the bill of
lading was less than that fixed by the schedule rates,
fares and charges established and published in accord-
ance with the act of Congress known as the "Interstate
Commerce Law," and that the agent of appellant at At-
lanta had, inadvertently and by mistake, wrongfully
and in violation of that law, agreed upon and specified
in the bill of lading a rate of 96 cents per hundred
pounds, instead of $1.28, as said schedule required him
to charge. Appellee refused to pay the extra charge,
amounting to $8, and appellant retained possession of
the carriages until August 11, 1896, when it delivered
them to appellee upon the payment of $24, the stipulat-
ed charge. Appellee instituted this suit to recover the
damages resulting to her from the loss of the use and
hire of the carriages, the actual injury thereto, and their
deterioration in value, during the period of detention.

The subject matter of the contract, the transportation
of goods from one state to another, was an act of inter-
state commerce, and as such a subject of federal cogni-
zance and governed by the act of Congress entitled "An
Act to amend an act entitled an Act to regulate Com-
merce," approved February 4, 1887. By the provisions
of section 6 of this act, every common carrier subject to
the same is required to print and publicly post at each
station its route, for the inspection and information of
the public, the schedule of fares, rates and charges for
the carriage of passengers and property thereon. It is
further provided that "when any such common carrier
shall have established and published its rates, fares and
charges in compliance with the provisions of this sec-
tion, it shall be unlawful for such common carrier to
charge, demand, or collect, or receive from any person
or persons a greater or less compensation for the trans-

portation of passengers or property, or for any service
in connection therewith, than is specified in such pub-
lished schedule of rates, fares and charges, as may at
the time be in force." It is further unlawful for any
person, in any manner, *knowingly*, to obtain transpor-
tation at less than the published schedule of rates, and
any violation of the statute, whether by the consignors
or consignees, or by the carrier, is made a highly penal
offense. In *Mobile & Ohio R. R. Co. v. Dismukes*, 94 Ala.
131, decided in 1891, we had occasion to consider a con-
tract for the transportation of goods into this state from
another state at less than the published schedule rates,
and to construe the act of Congress with respect to its
effect on such a contract and on the rights of the parties
thereto. In that case, as in this, the plaintiff sought to
recover damages for the refusal of the carrier to deliver
the goods after tender of the amount of the charges spe-
cified in the bill of lading. We then held that, although
the contract was illegal and void as to the carrier, be-
cause made in violation of the interstate commerce law,
and could not be made the basis of any action on the
part of the carrier, yet, inasmuch as the consignor had
not *knowingly* obtained the transportation at less than
the schedule rates, his act was not tainted with the
criminality of the carrier, and, not being *in pari delicto*
with the carrier, he was entitled to invoke that principle
of law which authorizes the enforcement of such a con-
tract in behalf of the innocent party; and he could,
therefore, upon the payment or tender of the charges
named in the bill of lading, maintain the action and re-
cover damages for the failure of the carrier to deliver
the goods to him. It is now insisted by counsel for ap-
pellant, that the present case differed from the case cit-
ed in two particulars: first, because the schedule rate,
which appellant claims to be entitled to collect, was not
unreasonable or excessive, or disproportionate to the
value of the goods, as in the *Dismukes* case, in which the
value of the goods was $40, the charges specified in the
bill of lading $5.44, and the schedule charges $29.30;
and, second, because the contract was made in the State
of Georgia, and was therefore to be governed, as to its
nature, obligation and interpretation, by the law of that
state, and not by the law of Alabama; and by the law
of Georgia, a common carrier, engaged in interstate

traffic, who undertakes to transport goods from one state to another at less than the published schedule rates established in accordance with the act of Congress, is not precluded from recovering the full schedule rate because, by mistake, a less rate was agreed upon, and specified in the bill of lading, and may retain possession of the goods until the full schedule rate is paid. We are of the opinion that our ruling in the *Dismukes* case can no longer be followed, either in this or in any similar case involving the right of a consignor or consignee of goods, transported by a common carrier from one state to another, to recover damages for the refusal of the carrier, after the arrival of the goods at their destination, to deliver them upon the payment or tender of the charges agreed upon and named in the bill of lading, when such charges are less than the published schedule charges, in force at the time the contract was made, established in accordance with the provisions of the interstate commerce law. But neither of the particulars in which it is contended this case differs from that, will justify any modification of, or departure from that ruling. The principle on which that case was decided, is not affected by the degree of disparity between the schedule rate and the stipulated rate. What was there said in this respect, was by way of illustration only, to show the wrong and injustice of permitting a carrier, who may have induced a shipper, by promises of low rates, to ship his goods over its line, to recover a greater, and perhaps extortionate, rate. Nor can the ruling in that case be affected by the fact that by the law of Georgia, in which state the contract of carriage was made, the carrier may recover the schedule rate, notwithstanding a lower rate may have been agreed upon. The general rule of law, it is true, is, that a contract is governed, as to its nature, obligation, validity and interpretation, by the law of the place where it is made, unless the parties have in view some other law, or unless it is to be wholly performed in some other place, in which case the law of place of performance, or the law which both parties had in view must govern.—*Peet & Co. v. Hatcher,* 112 Ala. 514; *Cubbedge v. Napier,* 62 Ala. 518; *Donegan v. Wood,* 49 Ala. 242. And the weight of authority is, that this rule requires a contract for the transportation of goods by a common carrier from one state or

country to another to be governed by the law of the place where it is made and where the performance begins, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other state or country. Wharton on Conflict of Laws, §471; Hutchinson on Carriers, §§140-44; *Liverpool & G. W. Steam Co. v. Phenix Ins. Co.,* 129 U. S. 397; *McDaniel v. Chicago & N. W. Railway Co.,* 24 Iowa, 412; *Hogel v. C. M. & St. L. Railway Co.,* 82 Iowa, 477; *Pennsylvania Railroad Co. v. Fairchild,* 69 Ill. 260; *Meuer v. Chicago, M. & St. P. R. Co.,* 5 S. Dak. 568; *Fonseca v. Cunard S. S. Co.,* 153 Mass. 553; *Potter v. The Majestic,* 60 Fed. Rep. 625. But this rule can have no application where the subject matter of the contract is one of national cognizance and Congress has assumed exclusive cognizance of it by enacting a law for its complete regulation. In such case, the parties must be presumed to contract with reference to the act of Congress and its effect on the subject matter, and not with reference to the law of the state where the contract was made, and they cannot, by agreement or otherwise, make any other law the applicatory law in the determination of the nature, validity or interpretation of the contract. No principle of comity requires the courts of one state to place the same construction upon the act of Congress, with respect to its effect on such a contract, given to it by the decisions of the Supreme Court of another state, in which the contract was made. Unless the national law has been constructed by the Supreme Court of the United States, the courts of the various states will follow their own judgment in determining its effect on the contract, and the rights of the parties thereto growing out of it; but if it has received a construction from the highest national tribunal, its decision is supreme, and by it the state courts are bound.—*Tubbs v. Wilhoit,* 73 Cal. 61; *State v. Andriano,* 92 Mo. 70; *Lyman v. Central Vt. R. Co.,* 59 Vt. 167; *Bressler v. Wayne Co.,* 25 Neb. 468. The interstate commerce law has been construed by the Supreme Court of the United States, and its effect upon a contract by a common carrier to transport goods from one state to another at less than the published schedule rates, and upon the rights of the parties to such a con-

tract, has been declared. In *Gulf City & Santa Fe R. Co. v. Hefley*, 158 U. S. 98, the plaintiff sued to recover damages for the refusal by the carrier to deliver goods consigned to him, after tender of payment of the stipulated charges named in the bill of lading. The goods, a lot of furniture, had been received by the carrier at St. Louis, Missouri, for transportation to Cameron, Texas, at a stipulated rate, specified in the bill of lading, of 69 cents per hundred pounds, the charges amounting to $82.80, whereas the published schedule rate in force at the time was 84 cents, and the charges should have been $100.80; and the plaintiff, as in this case, was ignorant of the fact that the rate obtained was less than the schedule rate. It was held, in an opinion by BREWER, J., that the plaintiff was not ent'tled to recover. It is true, that the only question discussed in the opinion was, whether or not the inter-state act superseded the Texas statute, which pro-hibited a common carrier from charging or collecting from the owner or consignee of freight a greater sum than that specified in the bill of lading, and this question was decided in the affirmative, as in the *Dis-mukes* case. But this was not the only effect of the decision, and it is by its effect on the rights of the par-ties to such a contract, by whatever process of reason-ing the decision may be reached, that the state courts are bound. The clear effect of the decision was to declare that one who has obtained from a common carrier transportation of goods from one state to another at a rate, specified in the bill of lading, less than the published schedule rates, filed with and ap-proved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges; in other words, that whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of Congress, for the amount fixed by the published schedule of rates and charges, and this lien can be discharged, and the consignee can become entitled to the goods, only by the payment, or tender of payment, of such amount. Such

is now the supreme law, and by it this and the courts of all other states are bound, and for this reason our ruling in the *Dismukes* case can no longer be followed.

It results that the inquiry as to the law of the State of Georgia was entirely immaterial and irrelevant, and the court below did not err in sustaining the objection to appellant's offer of evidence on this point. But proof of compliance with the requirements of the interstate commerce law, of the amount of the charges fixed by the published schedule of rates and charges, and of the other facts offered in evidence by appellant, was relevant, and the demurrers to the pleas setting up these facts should have been overruled, and under such pleas evidence of these facts should have been admitted. Upon uncontradicted proof of these facts, if they had been in evidence, in connection with the other evidence in the case, the defendant would have been entitled to the general charge in its favor. The judgment of the city court must be reversed, and the cause remanded for further proceedings in conformity to this opinionion.