KIZER *v.* TEXARKANA & FORT SMITH RAILWAY COMPANY.

Opinion delivered April 15, 1899.

INTERSTATE COMMERCE ACT—UNDUE PREFERENCE.—A contract by which a carrier undertakes to carry the lumber of a certain shipper to a point beyond the state at a stipulated rate, which is less than the lumber could be shipped over the carrier's line without loss to the carrier, and therefore less than the carrier will carry lumber for others under the same conditions, is void under the interstate commerce act making it unlawful for a carrier to give any undue or unreasonable preference or advantage to any particular person. (Page 354.)

Appeal from Little River Circuit Court.

WILL P. FEAZEL, Judge.

STATEMENT BY THE COURT.

This is an action to recover from the railway company an amount which the appellant alleges was exacted of and paid by him for freights on lumber, which he shipped over appellant's road, in excess of the amount stipulated for by him in a contract made by him with the appellee, which contract is as follows, to-wit:

"State of Texas, Bowie county. . This agreement, by and between W. L. Whitaker, as president, manager and owner of the Texarkana & Ft. Smith Railway Company of the first part, and A. J. Kizer, for himself and his associates, heirs, successors and assigns, of the second part, witnesseth:

"1. That the party of the second part, individually or associated with others, in partnership or incorporation as he may elect, agrees to construct and maintain a sawmill in Little River county, on the line of said railway, for the manufacture of pine, oak and other kinds of lumber at a point already selected by the party of the second part.

"2. That the party of the second part agrees, in consideration of the foregoing, and for and in behalf of said railway and said company, to furnish cars and ship all lumber manufactured by said mill for said party of the second part, for his

heirs, successors and assigns of said mill over all routes over which lumber is usually shipped from Texarkana, Texas, and Arkansas, at a rate not to exceed two cents per hundred pounds over the rates charged by the different railway companies from Texarkana.

"This contract to be in force until January 1st, eighteen hundred and ninety-seven (1897) A. D.

[Seal]         "TEXARKANA & FT. SMITH RY. CO.

"By W. L. WHITAKER, President."

Exhibit B to the complaint is an itemized account showing an overcharge, commencing January 12, 1893, and ending December 27, 1894, on 346 cars of lumber, and the entire amount of these overcharges was $1,304.15. Summons was issued December 20, 1895.

To the foregoing complaint, an amendment was filed setting forth 146 similar overcharges that were made during the year 1895, and amounting to the sum of $566.23.

The defendant's answer denied that it executed the written contract, Exhibit "A" to the complaint, and alleged the same was not its act and deed. It denied that it overcharged the plaintiff upon his said shipments in the sum of 2 cents per hundred or in any amount, and averred that it never charged plaintiff anything except the usual, customary and reasonable rates. That, if said Whitaker ever executed said contract, it was without authority from defendant or its board of directors, and was *ultra vires* and an illegal act on the part of said Whitaker; that the rate mentioned in said contract was less than the established and reasonable regular rates charged by the defendant for similar services, and that the defendant's regular tariff rates were and are, in all respects, reasonable, and the rate mentioned in said contract was unreasonable, and would constitute an unlawful discrimination against the rest of the public; all of said traffic being interstate, and said contract is void and incapable of enforcement. This answer was verified by W. A. Williams, who stated therein that he was the general manager and authorized agent of the defendant, and that he believed the averments therein to be true.

To this answer, an amendment was filed which alleged that the defendant's line of railway between Rankin and Texarkana

is an interstate line of road, its portion north of Red River being in Little River county, Arkansas, and the portion south of Red River being in Bowie county, Texas, and all shipments from Rankin to Texarkana are interstate shipments. It denied that it demanded, or that plaintiff paid it, any amount by reason of the shipments mentioned in the original or amended complaint, except what was justly and legally due the defendant, etc.

The facts, as found by the court, sitting as a jury, are as follows, to-wit:

"The court finds that on the 10th day of September, 1891, the plaintiff and defendant entered into a contract in writing, whereby plaintiff agreed to construct and maintain a sawmill in Little River county, Arkansas, on the line of defendant's road at a point already selected by plaintiff, for the manufacture of pine, oak and other kinds of lumber, and the defendant agreed on its part to furnish cars and ship all lumber manufactured by said mill for plaintiff over all roads over which lumber is usually shipped from Texarkana, Texas and Arkansas, at a rate not to exceed 2 cents per hundred pounds over the rates charged by the different railroad companies from Texarkana, and that plaintiff has in all things complied with his part of said contract; but that defendant, from and after the 30th of November, 1892, has refused to ship such lumber for plaintiff at the contract price, but has charged plaintiff a greater rate for shipping said lumber than the rate provided by the contract, and that plaintiff was compelled to pay such higher rate, in order to get his lumber shipped. That the contract was executed on the part of the defendant by W. L. Whitaker, who was then the president and general manager of the defendant company, and as such had authority to make freight rates and to execute a contract fixing the rate for shipment of freight; that, at the time the contract was entered into, the defendant's road was not completed to Rankin, the point where plaintiff's mill was located, and that no freight rates had been established in Arkansas for the shipment of freight for that point. That defendant did establish the following rates November 15, 1892, to take effect November 30, 1892; not to exceed three cents per 100 pounds from any point on de-

fendant's road to Texarkana.   When said instrument was signed by Whitaker, it was contemplated that plaintiff and Wm. Buchanan and B. T. Estes should be associated with him in the establishment of the sawmill mentioned in said instrument.   Buchanan and Estes were directors of the defendant company, and Whitaker was its president and general manager at that time.   The contract was written by Estes, who is the plaintiff's father-in-law.   The defendant company then had its regularly constituted board of nine directors.   There was no action of said board of directors authorizing or ratifying the execution of said contract made by Whitaker, shown by the minutes of the company. In September, 1891, the defendant's railroad extended from Texarkana northward through Bowie county, in the state of Texas, and across Red river past Ogden in Little River county, Arkansas,—a distance of about fifteen miles,—and, at the time of the execution of said contract by Whitaker, sawmills were located on the line of said railroad at Corbin, Texas, and Ogden, Arkansas, and other points.   Plaintiff had selected and established the site for his sawmill at Rankin, about twenty-five miles north of Texarkana in 1890 before the contract sued on was executed.   The defendant's road was in process of construction northward, and was completed to Rankin in December, 1891.   As soon as the road reached Rankin, the plaintiff put in his sawmill there, and by agreement between himself and defendant became, and has ever since been, and still is, the defendant's regular local agent at said town of Rankin, and as such agent had and has control of defendant's local freight and passenger business at that point.   When the contract sued on was signed by Whitaker, the defendant's regular tariff rate for transportation from Corbin to Texarkana, charged and collected from the mill owners at Corbin, was $10 per car of 30,000 pounds, and when the road reached the different mills the rates for shipments of lumber originating on said railroad at Corbin, Ogden, and other points were regulated, and so understood by the shippers to points on other railroads beyond Texarkana, in accordance with such traffic arrangements as might exist from time to time between the defendant and its connecting carriers at Texarkana.   It was customary for the connecting roads leading out of Texarkana to allow the defendant

certain pro rates on all shipments of lumber originating on defendant's line, and the defendant gave the shippers on its said line the benefit of such pro rates, when said pro rates amounted to as much as four cents per hundred pounds. The defendant allowed the shippers on its line the same through rates as were enjoyed by the shippers from Texarkana. When such pro rates were less than four cents per hundred pounds, the defendant charged shippers on its line an arbitrary of an amount sufficient to make up said four cents. Lumber cannot be transported from Rankin or other points on defendant's line to Texarkana without loss to the railroad at a less rate than four cents per hundred pounds. In November, 1892, the defendant's connecting carriers at Texarkana all withdrew their pro rate• arrangements with the defendant, and ceased to allow it any pro rates at all, whereupon the defendant, after fifteen days' previous notice, established and published at all stations along its line, a rate of three cents per hundred pounds on all shipments of lumber to Texarkana. The defendant's regular established rates varied from two and three to four cents per hundred during the time complained of by the plaintiff, in accordance with the pro rate allowed it by the connecting carriers, and the defendant has demanded of and collected from the plaintiff the same rates for transportation of his lumber as were contemporaneously charged other shippers and the public in general under the same circumstances and conditions, and no more.

"In December, 1891, W. A. Williams became general manager and the only authorized traffic agent of the defendant. In December, 1892, the defendant company was reorganized, and its properties and franchises and securities were purchased by the present management of the road, who had no notice or knowledge of the existence of the contract sued on. The defendant's tariff rates on shipments of lumber from points along its lines were regularly furnished to plaintiff, who knew, at the time he made each shipment complained about, the established rate which would be charged himself as well as the rest of the public. After plaintiff made his first shipment at the three-cent rate, which shipment was on January 12, 1893, from Rankin to La Junta, Colorado, and after said shipment had

been delivered to the consignees, the plaintiff wrote to Whitaker and to W. A. Williams, protesting against the rate, and calling attention to the contract which had been executed by Whitaker. This was the first that Williams or the management of the road knew of the existence of the contract, and Williams at once interviewed Kizer, and repudiated the contract as illegal, and notified Kizer that he would be charged the same rates as other shippers were charged, and that he must be governed by the regularly established rates of the defendant, as promulgated from time to time. After which the plaintiff made the shipments mentioned in his original and amended complaint, wherein he was charged by the defendant the sums mentioned in said complaints in excess of the rate specified in the contract sued upon. But the charges made in all cases were in accordance with the regularly established and adopted tariff rates of the defendant."

The plaintiff objected to the foregoing finding of facts, and, the objections being overruled, the exceptions were saved.

And thereupon the court declared the law as follows: "The court concludes that the contract sued upon in this case is void, and cannot be enforced; and, inasmuch as the plaintiff has paid no more than the other shippers under the same circumstances and conditions, such contract is unlawful and prohibited by the interstate commerce act, and is void."

To this declaration of law the plaintiff objected, and, his objections being overruled, he excepted.

Judgment being rendered for the defendant, the plaintiff filed his motion for a new trial in apt time, setting forth in said motion the following grounds:

"(1). Because the judgment is contrary to the evidence. (2). Because the judgment is contrary to the law. (3). Because the judgment is contrary to the law and evidence. (4). Because the court erred in its declaration of law. (5). Because the court erred in refusing to declare the law as asked by the plaintiff. (6). Because the court erred in its conclusions of law. (7). Because the court erred in its findings of fact."

This motion was by the court overruled, and exceptions

duly saved. The bill of exceptions was filed in proper time, and appeal has been taken to this court.

*Scott & Jones*, for appellant.

The contract sued on is not illegal, as being contrary to the interstate commerce law. 43 Fed. 37; 145 U. S. 263; 162 U. S. 297; 32 S. W. 427; 33 Atl. 239.

*Wm. T. Hudgins*, for appellee.

Appellant's contract gave him an illegal and unreasonable preference, and is therefore void. Interstate Com. Law, §§ 1, 2 and 3; 45 Am. & Eng. Ry. Cas. 234; 13 Am. Rep. 457; S. C. 18 *id.* 754; 43 Oh. St. 571; 23 Am. & Eng. Ry. Cas. 612; 27 *id.* 8; 67 Ill. 11; 1 Int. Com. Rep. 685; 2 *id.* 496; 3 Int. Com. Rep. 502; 1 *id.* 300; 2 *id.* 95.

HUGHES, J., (after stating the facts.) We are of the opinion that the facts in this case, as found by the court, as set out in the statement of facts, show that the contract upon which the appellant relies is within the prohibition of sections one and two and three of the interstate commerce law enacted by congress. The sections of this law invoked by appellee are as follows:

"Section 1. All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivering, storage or handling of such property, shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful.

"Section 2. That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered or to be rendered in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions. such common carrier shall be deemed guilty of un-

just discrimination, which is hereby prohibited and declared to be unlawful.

"Section 3.  That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."  Act of congress of February 4, 1887.

The shipments from Rankin to Texarkana for overcharges on which appellant brought this action were interstate commerce.  The evidence tends to show, and the court found, that the appellant's lumber could not have been shipped from Rankin to Texarkana at a less rate than four cents per hundred pounds without loss to the railroad; that appellee charged the appellant the same rate as it charged other shippers under like circumstances and conditions, and no more, which varied from two and three to four cents per hundred in accordance with the pro rata allowed it by connecting carriers.  This contract on which appellant relies proposed to allow appellant a special rate, in no event to exceed two cents per hundred pounds.  This would give appellant an unreasonable preference and advantage over other shippers of lumber in the same county, of from one to two cents per hundred pounds.  There was no other railroad through that county, and there were several mills shipping lumber over said road between Rankin and Texarkana.  This contract appears to be plainly within the above-quoted provisions of the interstate commerce law.  These provisions place "special rates, rebates, drawbacks and other devices" under the same prohibition, and make such unlawful in express terms. "It has been adjudged in many cases ₜthat when these circumstances arise, the contract which was entered into by the parties in this action is contrary to public policy, and cannot be enforced."  *Bullard* v. *Northern Pacific R. Co.* 45 Am. & Eng. R. Cases, 544, and cases there cited.  "An agreement by a railroad company to carry goods for certain persons at a cheaper rate than it will carry under the same conditions for

others is void as creating an illegal preference." *Messenger* v. *Pennsylvania Rd. Co.*, 36 N. J. L. (7 Vroom) 407; S. C. 13 Am. Reports, 457.

"In *Atkinson* v. *Ritchie*, 10 East, 530, Lord Ellenborough, C. J., said in the opinion "that no contract can be properly carried into effect which was originally made contrary to the provisions of the law, or which, being made consistently with the rules of law at the time, has become illegal in virtue of some subsequent law, are propositions which admit of no doubt." Professor Pomeroy writes: "An illegal contract is, as a rule, void, not merely voidable, and can be the basis of no judicial proceeding. No action can be maintained upon it, either at law or in equity." "The principles which have been stated are applicable to the act of congress to regulate commerce, and the contract which has been described." *Bullard* v. *Northern Pacific R. Co.*, 45 Am. & Eng. R. Cas. 245.

We think the contract relied on in this case is prohibited by the act of congress to regulate commerce, and is void.

The judgment is affirmed.

BUNN, C. J. I concur in the decision and opinion of the court for the reasons therein stated, and for the additional reason that the defendant railway company, which is the successor of the company formerly owning the road, and alleged to have been represented by Whitaker, had no notice of the existence of the special freight contract said to have been made with the lumber company by Whitaker, as agent of the predecessor company, and the same not constituting a lien on the property of the road.

WOOD and RIDDICK, JJ., dissent.