THOMAS E. HAURIGAN, APPELLEE, V. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.*

FILED NOVEMBER 21, 1907. No. 14,948.

1. **Pleading: CONSTRUCTION.** A petition which seeks a recovery for several breaches of one contract states but one cause of action, and is not subject to a motion to separately state and number.

2. **Carriers: DISCRIMINATION: MISTAKE.** Section 10009, Ann. St., does not render void a contract between a railroad company and a shipper to transport merchandise for less than the usual and regular freight rate, where such rate has been agreed to by mistake of the railroad company without intending any discrimination against other shippers. Where such contract had been entered into and the freight transported in pursuance thereof, if the railroad company compels the payment of freight charges in excess of the contract rate, such excess may be recovered by the shipper.

* Rehearing allowed. See opinion, p. 139, *post*.

3. **Appeal:** EVIDENCE: HARMLESS ERROR. Rulings on the admission of evidence examined, and *held* not to be prejudicially erroneous.

APPEAL from the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*B. T. White, C. C. Wright* and *B. H. Dunham,* for appellant.

*Grant G. Martin* and *R. J. Stinson, contra.*

GOOD, C.

Plaintiff brought this action against the defendant to recover damages for a breach of contract. From a judgment in favor of the plaintiff the defendant appeals.

Plaintiff's cause of action grows out of the shipment of a car-load of sweet potatoes from Fremont to Hastings. He alleges in his petition that he made an oral agreement with the defendant to transport a car of potatoes from Fremont to York by way of David City, with a stop-over privilege at the latter city, for which he was to pay the sum of $24 freight and $5 for the privilege of stopping at David City to unload a portion of the potatoes; that the defendant wrongfully billed the car to David City, instead of to York; that at David City he was compelled to pay the sum of $24 before being permitted to open the car and unload a portion of the potatoes, and was informed that he would have to pay the additional sum of $24 to transport the remainder of the potatoes to York. The agent of the defendant further advised the plaintiff that the rate to Hastings was the same as to York, and that Hastings, being a larger city, would be a more desirable market for the potatoes. Thereupon the plaintiff consented to have the car rebilled to Hastings, instead of to York. By an error of the defendant's agent the potatoes were sent to York, instead of to Hastings, and, when plaintiff reached Hastings some days later, he ascertained, upon inquiry from the defendant's agent, that the car had not arrived. Some delay occurred before the potatoes could be for-

warded to Hastings. When they reached Hastings, the plaintiff was compelled to pay, as freight, the sum of $37.50 before being permitted to enter the car to receive them. The plaintiff also avers that he had cleated the end doors of the car so as to hold them open for the purpose of permitting air to circulate through the car and thereby prevent the potatoes from heating and spoiling, and that the defendant, its agents or employees, wrongfully closed the end doors of the car so that no air could circulate through it, and that, by reason of the wrongful closing of the doors and the wrongful and negligent delay in the transportation of the potatoes to Hastings, the potatoes became heated, damaged and spoiled. Defendant first moved to require the plaintiff to separately state and number his causes of action. This motion was overruled. Thereafter the defendant answered, admitting that it collected the charges for freight, as alleged by plaintiff, and averred that the charges for freight collected were the rates and charges in force and effect at the time when the said consignment of potatoes was shipped, and that they were the regular rates and charges then demanded and collected by the defendant from all persons and the public generally for like and contemporaneous service, and that the arrangement and agreement between the agent of the defendant and the plaintiff for the transportation of the said car of potatoes for a less sum was unlawful, void and unenforceable under the laws of the state, as constituting an unjust discrimination in favor of the plaintiff, and alleged that the injuries and damages sustained were due to the inherent nature and tendency of the potatoes to rot and decay, and to the negligent acts of the plaintiff, and not to any fault or negligence of the defendant, and denied all the other allegations of the petition.

The first assignment of error relates to the overruling of the defendant's motion to require the plaintiff to separately state and number his causes of action. Whether this was error depends upon whether more than one cause of action is set forth in the petition. An examination of

the allegations convinces us that the damages sought to
be recovered arise out of a single contract, and that all
the acts complained of are breaches of that contract.   It
is true that the original contract provided for the trans-
portation of the potatoes to York, with a stop-over privi-
lege at David City, but by mutual consent the original
contract was changed so as to make the city of Hastings
the final destination, instead of York.   The contract pro-
vided for the transportation for a specified sum to the city
of York.   The agent of the defendant at David City
informed the plaintiff that the rate to Hastings would be
the same as to York, so that by mutual consent the con-
tract was modified and changed to make Hastings the final
destination.   As we view it, it is the same as if the contract
had originally been made at Fremont to ship the potatoes
to Hastings, with a stop-over privilege at David City.
The law imposes upon the defendant the duty of trans-
porting freight without unnecessary delay and to use due
care to transport it safely.   This duty and obligation im-
posed by law became and was a part of the contract.   This
court has held in the case of *Denman v. Chicago, B. & Q.
R. Co.,* 52 Neb. 140, that an action for damages occasioned
by delay in shipping freight may be grounded on the con-
tract.   The same would undoubtedly be true of an action
to recover damages for negligent handling and caring for
the merchandise while being transported.   All of the dam-
ages sought to be recovered arise from the breach of the
one contract, and constitute but separate items of one
cause of action.   We think the rule of law applicable to
the case is set forth in Bliss, Code Pleading (2d ed.), sec.
118, as follows: "It is a rule that a cause of action—as, one
springing from a single contract—cannot be so split as to
authorize more than one action; and the same rule would
make it improper to so divide a single cause of action, by
separate statements in one complaint, as to show more
than one cause of action. * * * 'All damages arising from
a single wrong, though at different times, make but one
cause of action; and all debts and demands already due

by the same contract make one entire cause of action.' "
The rule is thus stated in Maxwell, Code Pleading, p. 256:
"When the causes of action all grow out of and are a part
of the same wrong, they are but separate items of damage,
and not different causes of action.. Thus, where sheep
were sold upon the representation and warranty' that they
were sound, but were in fact all affected with the hoof-rot,
but the plaintiff, relying upon the defendant's representa-
tions and warranty, turned the sheep so purchased into
his field with a large number of other sheep, whereby they
became diseased, and the pasture injured, it was held that
there was but one cause of action, although there were a
number of items of damage"—citing the case of *Wilcox
v. McCoy,* 21 Ohio St. 655. The motion to separately state
and number was properly overruled.

The second ground urged for a reversal of the case is
that the rate agreed upon for the shipping of the car of
potatoes was less than the regular rate charged to the
public, and the contract was therefore, under the statutes
of Nebraska, void, and no action for the breach thereof
could be maintained. Section 10009, Ann. St., among
other things, provides: "No railroad company within this
state shall  *  *  *  directly or indirectly charge to or
receive from any person or persons, or association or cor-
poration any greater or less sum, compensation, or reward
than is charged to or received from any other person or
persons, association or corporation for like · and contem-
poraneous service in the receiving, transporting, storing,
delivering or handling of freights." Section 10010 pro-
vides that any railroad company, officer or agent wilfully
violating any of the provisions of this act shall be liable to
the party injured for all damages sustained, and also be
liable to a severe penalty for the violation of.the law. The
defendant contends that section 10009 makes it unlawful
for the railroad company to transport freight for a less sum
than the regular rates charged to the public generally, and
that any contract so to do is absolutely void. There are
many eminent and respectable authorities that hold to this

doctrine and have so construed statutes very similar to our own. The doctrine is not without sound reason to support it. Upon the other hand, there are strong reasons to hold the railroad company to its contract as made. Our statutes do not require that the railroad company shall publish its tariff sheets, and, even if they did so, the classifications of freight are so numerous and complex that the ordinary and occasional shipper will be unable to ascertain the freight rate upon any commodity, except by applying to the company or its agents for information. If one contemplates a shipment of merchandise and applies to and receives from the railroad company information as to the rate, he then has his opportunity to elect whether he will ship or not. To say that a railroad company may, by mistake or inadvertence, quote a less rate than the usual or regular rate, and thereby induce a person to ship merchandise, and then to permit the railroad company, after the shipper has been placed in a position where he cannot retrace his steps, to collect the usual or greater rate, would be to cause the innocent to suffer injury for the negligent or wrongful act of the company, and to permit the company to profit by its own misconduct. If the railroad company, by negligence or mistake, may induce one to ship goods and merchandise by quoting him a less rate than the regular rate, and then collect the full rate, we see no reason why it might not wilfully and intentionally quote a lower rate for the purpose of securing the shipment, and then exact the regular rate. We do not think it is sound policy to permit the innocent to be thus lured to their injury and possible financial ruin by such methods. We think the rule is that, where, by mistake or inadvertence, the company has induced a person to ship goods by quoting a less rate than the regular rate, it should be held liable for the consequences. The object of the statute was to prevent discrimination. Under the law no penalty attaches to the railroad company unless the violation was wilful. The loss for the fault or mistake of the company should be visited upon it, and not upon the innocent party. The

view here expressed finds support in the case of *Missouri P. R. Co. v. Crowell Lumber & Grain Co.*, 51 Neb. 293, *Illinois C. R. Co. v. Seitz*, 214 Ill. 350, and 2 Hutchinson, Carriers (3d ed.), sec. 594. In the latter authority, commenting on the last case cited, it is said: "This rule is at variance with the decisions under the interstate commerce act, but it is more in accordance with justice and reason, and does not make the state acts swords of offense against the shipper as is the interstate commerce act in that respect." In *Bayles v. Kansas P. R. Co.*, 13 Colo. 181, 22 Pac. 341, it was held, under a constitutional provision forbidding "undue or unreasonable discrimination" by railroad companies in freight charges, a contract by a railroad company to carry freight at a rate less than its published schedule is not void as being unjust discrimination and against public policy in the absence of evidence that such special rate is an exclusive privilege. We think it was the evident intention of the legislature, by the enactment of the statutes referred to, to prevent a railroad company from making unjust discriminations, and that it was not the legislative intent or purpose to permit a railroad company to quote a lower rate than the usual or regular rate, and thereby induce a person to ship freight, and then use the statute as an instrument to enable it to collect a greater rate. It was not the intention of the legislature to permit a railroad company, by its negligent and wrongful acts, to injure another to its own profit. We are of the opinion that the plaintiff, notwithstanding the statute, was entitled to recover the freight charges paid in excess of the contract rate.

Appellant contends that there was error in the admission of certain evidence as to the amount of damages sustained. The plaintiff was permitted to answer the following question: "Q. Now, taking all these matters into consideration, you may state what the difference in the value of the potatoes would be if they had arrived in Hastings in good condition. A. $250." It will not be contended that the admission of this evidence was not erroneous, but,

Hanrigan v. Chicago & N. W. R. Co.

in view of the fact that counsel for the defendant had previously examined the plaintiff upon his competency to testify, and had brought forth from him the fact that from 130 to 150 bushels of potatoes were spoiled, and that their market value was $1.50 a bushel, which was not contradicted, and, in view of the fact that the total amount of recovery, including the excessive freight charges, was $59, it cannot be said that the admission of this evidence wrought any prejudice to the defendant.

Appellant also contends that there was no competent proof that the end doors of the car were closed by the defendant or its employees. The undisputed evidence shows that the doors were cleated open by the plaintiff before the car left David City, and that the doors were closed and fastened when he first saw the car in Hastings. During the interim the car had been in the control of the defendant and its employees, and it was responsible for the proper care of the car and care of the merchandise therein. We do not think other evidence upon this point was required of the plaintiff.

We find no reversible error in the record, and recommend that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed June 26, 1908. *Affirmed on condition:*

1. Carriers: DISCRIMINATION: MISTAKE. Under section 10009, Ann. St., a contract between a railroad company and a shipper to transport merchandise for a less rate than that usually and regularly charged to others for similar and contemporaneous service is void, even though such rate was agreed to by mistake; and an action will not lie against the carrier for a breach of the contract, if it exacts the regular rate.

2. Cases Disapproved. The second paragraph of the syllabus in this case, *ante*, p. 132, overruled, and the holding in *Missouri P. R. Co. v. Crowell Lumber & Grain Co.*, 51 Neb. 293, disapproved.

GOOD, C.

This is a rehearing of the case reported *ante*, p. 132. A statement of the facts will be found in the former opinion. The rehearing was sought and granted upon the propositions laid down in the second paragraph of the syllabus to that opinion. It was there held that section 10009, Ann. St., did not render void a contract between a railroad company and a shipper to transport merchandise for less than the usual and regular freight rate, where such rate has been agreed to by mistake of the company without intending any discrimination against other shippers. It was also held that, where such contract was made and freight transported pursuant thereto, if the railroad company compelled payment of freight charges in excess of the contract rate, such excess could be recovered by the shipper in an action for breach of the contract. Section 10009, Ann. St., so far as the same is material to a consideration of this case, is as follows: "No railroad company within this state shall   *   *   *   directly or indirectly charge to or receive from any person or persons, or association or corporation any greater or less sum, compensation, or reward than is charged to or received from any other person or persons, association or corporation for like and contemporaneous service in the receiving, transporting, storing, delivering or handling of freights." Section 10010, Ann. St., provides severe penalties for any railroad that shall violate any of the provisions of the act, and makes it liable to the party injured for all damages sustained. In the present case the rate was fixed by inadvertence and mistake at a less rate than the regular charges made to other persons and to the public for like and contemporaneous services. But the mistake was discovered by the railroad company before the charges were collected, and it then exacted the full regular rate before it would deliver the freight to the consignee. The action was to recover for a breach of the contract. In the former opinion it was held that, because

the contract was entered into by mistake, and because there was no intent or purpose to discriminate, the contract was not void as being in conflict with the provisions of the statute above quoted, and that the shipper in such an action could recover any excess of the contract rate which was collected by the railroad company.

It is a familiar rule of statutory construction that the court should consider the evil sought to be prevented, and ascertain and give effect to the legislative intent. There can be no doubt that the evil aimed at by this legislation was the unfair and unjust preference and advantage which accrued to favored shippers by rebates and freight rates lower than those given to other shippers. The purpose of this legislation was to put a stop to and make unlawful any discrimination in freight rates. The legislature evidently deemed it wise to prohibit any discrimination, and to say that all shippers shall be placed upon an absolute equality so far as freight rates are concerned. The statute provides that the railroad company shall not be permitted to *receive* from any person or persons a greater or less sum than is received from other persons. If the railroad company, after discovering the mistake, had received only the contract rate, which was less than the usual and regular rate charged to the public generally and to other persons for like and contemporaneous service, it would have done so knowingly and wilfully, and it would thereby have rendered itself liable to the penalties provided by section 10010, *supra*. This provision and the effect thereof were overlooked in the former opinion. The result of that holding would be to require the railroad company to wilfully violate the statute and render itself liable to the penalties therein provided.

The provisions of section 10009, above quoted, are very similar to the provisions of the second section of the interstate commerce act as it originally existed, and as amended by the Hepburn act of June, 1906. That section has frequently been before the federal and state courts.

for interpretation. Construing that act, the supreme court of Kansas, in the case of *Chicago, R. I. & P. R. Co. v. Hubbell,* 54 Kan. 232, said: "The sole question to be considered in this case is whether the plaintiff, having obtained, through a mistake of a clerk of the St. Joseph, St. Louis & Santa Fe Company, a rate on shipments of coal $1 a ton below the customary rate, can enforce a contract giving him such special rate against the plaintiff in error, which received and transported the coal, and paid to the connecting company its charges without notice of any special agreement. * * *. The claim of the plaintiff below rested solely on his special contract, and he now urges that he will be subjected to a financial loss by this operation if his special contract is not enforced. He also urges that, having been induced to make the shipment by the agent of the railroad company, if the rate quoted him was a mistake, the company rather than he should suffer for it. * * * We think the question as to whether or not the plaintiff knew of the existence of the joint tariff at the time he shipped the coal is wholly unimportant. There was an established rate governing all shipments. * * * Under the act of congress, all contracts discriminating either against or in favor of any shipper are unlawful, and the persons making such contracts on behalf of the corporation are liable to punishment. It was the plaintiff who was seeking to enforce the unlawful contract. * * * The contract, being in violation of the express provisions of the law, was utterly void between the immediate parties to it." In *St. Louis & S. F. R. Co. v. Ostrander,* 66 Ark. 567, 52 S. W. 435, it was held that, where a lower rate than the published rate was quoted by a railway company, the contract was illegal and could not bind the company whose agent made the rate, and that it is immaterial whether the rate was made knowingly or not. It was there intimated that, if any action at all existed, it was against the company for wrongfully misrepresenting the rate. In the case of *Savannah, F. & W. R. Co. v. Bundick,* 21 S. E. 995

(94 Ga. 775), it is said: "Inasmuch as the interstate commerce act prohibits not only contracting for, but also collecting, a less rate of freight on interstate shipments, * * * a common carrier * * * is not precluded from collecting from a shipper the full schedule rate because, by mistake, a less rate was named to him by the carrier at the point of shipment, and also inserted in a bill of lading signed both by the carrier and the shipper, no fraud or wilful deception having been practiced or attempted. On discovery of the mistake, after the shipment, but in time to correct it at the point of destination, it may there be corrected by the exaction of the full schedule rate." In this case the court further said: "It makes no difference whether Bundick was or was not ignorant that the rate named to him was an unlawful one. Under no circumstances would he be entitled to the benefit of a rate which was denied to other customers. To so hold would be in the very teeth of the statute, and would utterly defeat its purpose to prevent just such discrimination." Other cases announcing practically the same doctrine are the following: *Missouri, K. & T. R. Co. v. Bowles,* 1 Ind. Ter. 250, 40 S. W. 899; *Southern R. Co. v. Harrison,* 119 Ala. 539, 24 So. 552; *Houston & T. C. R. Co. v. Dumas,* 43 S. W. (Tex. Civ. App.) 609; *Bullard v. Northern P. R. Co.,* 10 Mont. 168; *Kizer v. Texarkana & Ft. S. R. Co.,* 66 Ark. 348, 50 S. W. 871; *Myar v. St. Louis S. W. R. Co.,* 71 Ark. 552, 76 S. W. 557; *Southern R. Co. v. Wilcox & De Jarnette,* 99 Va. 394, 39 S. E. 144; *Ward v. Missouri P. R. Co.,* 158 Mo. 226, 58 S. W. 28. The United States supreme court has also taken a similar view of the interstate commerce act, in the case of *Texas & P. R. Co. v. Mugg,* 202 U. S. 242. It was there held that a common carrier may exact the regular rate for an interstate shipment, although a lower rate was quoted by the carrier to the shipper, who shipped under the lower rate so quoted. This doctrine was reaffirmed in *Texas & P. R. Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426, and *Texas & P. R. Co. v. Cisco Oil Mill,* 204 U. S. 449.

A contrary construction was placed upon the second section of the interstate commerce act by this court in the case of *Missouri P. R. Co. v. Crowell Lumber & Grain Co.*, 51 Neb. 293. The former holding in the instant case was largely induced by the construction placed upon the interstate commerce act in the case last mentioned, together with the fact that it seems abhorrent to one's sense of fairness and justice that a carrier should escape liability where it either negligently or wilfully quotes to a shipper, who is ignorant of the regular rate, a less rate, and thereby induces him to make a shipment that he would not otherwise make, and then exacts of the shipper the regular rate to his financial loss and possible ruin. The contract seems to be clearly one for a less rate than that usually and regularly charged to other persons for similar and contemporaneous service, and would be in direct violation of the statute. To hold otherwise would be to defeat the very object of the statute, which was to prevent the discriminations and preferences among shippers. After a careful consideration of the subject, we think the better view is that the contract, in so far as it sought to fix a rate less than the regular rate, was void. If the action in *Missouri P. R. Co. v. Crowell Lumber & Grain Co.*, supra, was based upon a breach of a contract, as it appears to have been, it ought no longer to be followed as a precedent, and the second paragraph of the syllabus in this case, *ante*, p. 132, should be disapproved and overruled.

The recovery in this case included other items than the difference between the contract rate and the regular rate. This difference in rates, in this instance, amounted to $32.50, and that item is included in the judgment rendered for the plaintiff. To this extent the judgment is erroneous.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a new trial, unless the appellee enters a remittitur of $32.50 within 30 days of the date hereof, and, if such remittitur

is entered within that time, the judgment of the district court should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, it is ordered that, if the plaintiff shall enter a remittitur of $32.50 in this court within 30 days, the judgment of the district court shall be affirmed, and that, if the plaintiff shall fail to enter such remittitur within 30 days, said judgment shall be reversed and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.